## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Troy Souders, Melissa McCullough and Elijah Souders, <br><br> Plaintiffs <br><br> v. <br><br> The School District of Philadelphia, <br><br> Defendant | No: _____ <br><br> JURY TRIAL DEMANDED |

### COMPLAINT

### PRELIMINARY STATEMENT

1. This action is brought by Troy Souders and Melissa McCullough ("Parents"), and their son, Elijah Souders ("E.S."), (together, "Plaintiffs") against the School District of Philadelphia (the "District") pursuant to §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("§504"), Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 ("ADA"), as well as the state law claims set forth herein.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§1331 and 1367, as this case raises federal questions as well as claims under state law that are so related to federal claims that they form part of the same case or controversy.

3. Venue in this district is proper under 28 U.S.C. § 1391(b).

## PROCEDURAL BACKGROUND

4. Plaintiff E.S. (D.O.B. 7-26-1999) is an 18-year old young man residing in the District.

5. Plaintiff Troy Souders ("T.S.") is the father of E.S. and Plaintiff Melissa McCullough ("M.M.") is the mother of E.S.

6. Plaintiffs have resided in the District since April 2014.

7. E.S. has several disabilities, including visual impairment, hearing impairment, and chronic renal failure.

8. E.S. requires dialysis in a pediatric dialysis unit three times weekly.

9. E.S. is and at all relevant times has been a "handicapped person" as defined by §504 of the Rehabilitation Act of 1973 ("§504") and a "qualified individual with a disability" as defined by the Americans with Disabilities Act ("ADA").

10. Defendant District is a recipient of federal funds.

11. The District is subject to the provisions of §504 and the ADA.

12. The District is subject to the provisions of §5(i) of the Pennsylvania Human Relations Act, 43 P.S. 951-963.

13. Plaintiffs filed a request for due process in the Pennsylvania Office for Dispute Resolution ("ODR") on March 2, 2017.

14. ODR Independent Hearing Officer ("IHO") Brian Jason Ford, Esq. was assigned to the action.

15. On June 20, 2017, Plaintiffs filed an amended request for due process with IHO Ford.

16. The parties agreed to settle Plaintiffs' Due Process education related claims for compensatory education through March 31, 2017, exhausting all claims under the Individuals with Disabilities Education Act ("IDEA") and Section 504 over which the IHO and ODR had jurisdiction, while specifically reserving Plaintiffs' rights to pursue compensatory and other money damages against the District for discrimination claims arising under Section 504 and the ADA.

17. The parties further entered into stipulations of fact and of law, incorporated by reference into their Settlement Agreement.

18. An ODR Hearing Officer lacks authority to award remedies in the form of compensatory and other money damages pursuant to Section 504 and the ADA; thus, Plaintiffs have exhausted their administrative remedies in the Due Process proceedings.

19. On August 1, 2017, IHO Ford issued a dismissal order, which provided, in pertinent part:

> The Parents' complaint, as amended, raised claims concerning the appropriateness of the Student's education. Those claims arose under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 701 et seq., and Title II of the Americans with Disabilities Act as Amended (ADA), 42 U.S.C. § 12101 et seq. (the Education Claims).
>
> In addition to the educational claims, the Parents also raised discrimination claims arising under Section 504 and the ADA (the Discrimination Claims). ***The Discrimination Claims do not concern the Student's receipt of a free appropriate public education (FAPE).*** For those claims, the Parents sought relief, *inter alia*, in the form of money damages.
>
> On June 20, 2017, the parties reported that they have reached an agreement resolving the Education Claims. The parties subsequently confirmed that agreement was reduced to writing and fully executed. Consequently all claims are resolved except for the Discrimination Claims and demands for money damages remain.
>
> ***I have no jurisdiction to hear claims concerning discrimination that are unrelated to the provision of FAPE.*** I also have no authority to award money damages. Consequently, the parties jointly moved for me 1) to find that they have exhausted administrative remedies, and 2) dismiss the Discrimination Claims. That motion is hereby granted, and an appropriate order follows.

3

ORDER

Now, August 1, 2017, it is hereby ORDERED as follows:

> 1. The unresolved portion of the Parents' complaint is hereby DISMISSED both for lack of subject matter jurisdiction and because I have no authority to award the remaining demanded relief.
>
> /s/ Brian Jason Ford
> HEARING OFFICER

DISMISSAL WITHOUT PREJUDICE / ADMINISTRATIVE EXHAUSTION, *E.S. v. Sch. Dist. of Philadelphia*, ODR No. 18856-1617-KE (August 1, 2017) (emphasis added) (attached hereto as Appendix "A").

## FACTUAL BACKGROUND

20. The District had actual knowledge that E.S. was a "handicapped person" as defined by §504, and a "qualified individual with a disability," as defined by the ADA, residing in the District on or before May 5, 2014 and at all times since that date.

21. The District had actual knowledge that Plaintiffs sought to enroll E.S. in the District since at least May 5, 2014 and at all times since that date.

22. The District had actual knowledge that E.S. was subject to the protections and rights afforded under §504, and the ADA since at least May 5, 2014 and at all times since that date.

23. The District had actual knowledge that it was required to provide E.S. with a free appropriate public education pursuant to §504.

24. The District did not enroll E.S. for any portion of the 2013-2014 school year.

25. The District did not provide extended school year services to E.S. during the summer of 2014.

26. The District enrolled E.S. in Furness High School on October 24, 2014.

27. Furness High School could not accommodate E.S. because of his disabilities.

28. The District enrolled E.S. in the Overbrook Education Center ("OEC") on December 3, 2014.

29. OEC does not offer education services beyond 8th grade.

30. E.S. repeated 8th grade and attended OEC as an eighth-grader until June 18, 2015.

31. Upon graduation from OEC in June 2015, the District did not identify a placement for E.S. for the next school year.

32. On June 16, 2015 Plaintiffs signed a Notice of Recommended Education Placement ("NOREP") from the District, acknowledging that E.S would require a full-time visual support placement, but no location was specified.

33. In June 2015, the District sent an applications for E.S. to attend Overbrook School for the Blind ("OSB"), Elwyn Davidson, and Royer-Greaves School for the Blind.

34. Elwyn Davidson rejected E.S., and Royer-Greaves School for the Blind accepted E.S.

35. On August 18, 2015, OSB notified the District in writing that it would not offer E.S. enrollment for the 2015-16 school year.

36. In August 2015, the parents declined to send E.S. to Royer-Greaves School for the Blind as it is located over 30 miles from their home and the commute was too long for E.S. to attend safely due to his medical condition.

37. After receiving the August 18, 2015 letter from OSB, the District did not contact Plaintiffs to discuss other education options for E.S. prior to the 2015-16 school year.

Case 2:18-cv-02167-GJP   Document 1   Filed 05/23/18   Page 6 of 11

38.     Between August 18, 2015 and the beginning of the 2015-16 school year, the District did not provide Plaintiffs with any placement options for E.S. other than Royer-Greaves School for the Blind.

39.     In August 2016, and January 2017, the District completed new evaluations for E.S.

40.     In January 2017, a new Approved Private School application packet was submitted and sent to OSB, Elwyn Davidson, Royer-Greaves School for the Blind, PA School for the Blind, and Marie Katzenbach School for the Deaf.

41.     Elwyn Davidson rejected E.S., Royer-Greaves School for the Blind accepted E.S., PA School for the Blind rejected E.S., OSB rejected E.S., and Marie Katzenbach School for the Deaf did not make a decision.

42.     The District did not enroll E.S. in another education program until April 3, 2017.

43.     Between June 16, 2015 and April 3, 2017, E.S. did not attend school in the District.

44.     From June 16, 2015 until April 3, 2017, the District had actual knowledge that Plaintiffs sought enrollment for E.S. in the District.

45.     From June 16, 2015 until April 3, 2017 Plaintiffs did not enroll E.S. in any other school, school district, or education program, and did not inform or in any way indicate to the District that they had enrolled E.S. in any other school, school district, or education program.

46.     Plaintiffs contacted the District to request a placement that would give E.S. access to special education and related services during this time period.

47.     E.S. suffered significant harms due to the District denying him access to its facilities and services during the relevant period.

48.     E.S. suffered emotionally due to his lengthy physical and social isolation during the relevant period.

6

49. E.S. has suffered a financial injury resulting from his complete lack of education during the relevant period and resulting delays in his progress towards independence.

50. Plaintiffs T.S. and M.M. suffered separate and distinct harms during the relevant period, including deprivation of their right to parental participation in E.S.'s education.

51. Plaintiffs T.S. and M.M. suffered separate and distinct harm during the relevant period, including physical and social isolation in having to provide E.S. daily, all-day care in the home, loss of quality of life for themselves and for their family including E.S. and their daughter (E.S.'s older sister), loss of earnings, loss of employment opportunity, and loss of independence.

52. Plaintiffs T.S. and M.M. have suffered a separate and distinct financial injuries during the relevant period due to their having to provide E.S. daily, all-day care in the home, which interfered with and impaired their work.

53. Plaintiffs T.S. and M.M. have suffered a separate and distinct financial injuries during the relevant period due their incurring significant future costs and expenses resulting from delays in E.S.'s progress towards independence.

## LEGAL CLAIMS

### Count I

Section 504 the Rehabilitation Act of 1973 and Americans with Disabilities Act
*Intentional Discrimination*
Plaintiff E.S.

54. Plaintiffs incorporate by reference the preceding paragraphs as though set forth in full.

55. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability…shall, solely by reason of his or her disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance[.]" 29 U.S.C. §794(a).

56. The District receives federal financial assistance.

57. In knowingly, and/or with deliberate recklessness, failing to provide an appropriate education, and to meet the educational needs of E.S., a disabled student, as adequately as it met the needs of non-disabled students, the District intentionally discriminated against E.S. because of his disabilities

58. In failing to provide an appropriate education, and to meet the educational needs of E.S., a disabled student, as adequately as it met the needs of non-disabled students, the District was deliberately indifferent to E.S.'s right to be free of discrimination because of his disabilities.

59. The District's actions constituted discrimination against E.S. on the basis of his disability in violation of Section 504 of the Rehabilitation Act.

60. As a result of these violations, as set forth herein, Plaintiff E.S. suffered considerable financial damages and other injuries.

### Count II

Section 504 the Rehabilitation Act of 1973 and Americans with Disabilities Act
*Associational Discrimination*
Plaintiffs T.S. and M.M.

61. Plaintiffs incorporate by reference the preceding paragraphs as though set forth in full.

62. Under both the Rehabilitation Act and the ADA: "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

63. The District caused Plaintiffs T.S. and M.M. separate and distinct harms during the relevant period, including depriving them of their right to parental participation in E.S.'s education.

64. The District caused Plaintiffs T.S. and M.M. separate and distinct emotional harm by imposing on E.M. a lengthy physical and social isolation during the relevant period, and, thus, imposing on T.S. and M.M. their own physical and social isolation in having to provide E.S. daily, all-day care in the home, as well as loss of consortium.

65. The District caused Plaintiffs T.S. and M.M. separate and distinct financial injuries during the relevant period by requiring them: (1) to provide E.S. daily, all-day care in the home, which interfered with and impaired their work; and (2) to incur significant future costs and expenses resulting from delays in E.S.'s progress towards independence.

## Count III

Pennsylvania Human Relations Act, §5(i)
43 P.S. 951-963
*Unlawful Discrimination*
All Plaintiffs

66. Plaintiffs incorporate by reference the preceding paragraphs as though set forth in full.

67. Section 5(i) of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. 951-963, provides in pertinent part:

It shall be an unlawful discriminatory practice…:

…

(i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any public accommodation, resort or amusement to:

> (1) Refuse, withhold from, or deny to any person because of … handicap or disability, or to any person due to use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals, either directly or

indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement....

(3) Exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations or other opportunities to a person because of the handicap or disability of an individual with whom the person is known to have a relationship or association.

68. The PHRA defines "person" in pertinent part as:

[O]ne or more individuals, partnerships, associations, organizations, corporations, legal representatives, trustees in bankruptcy or receivers. It also includes...the Commonwealth of Pennsylvania, and all political subdivisions, authorities, boards and commissions thereof.

69. The PHRA defines "public accommodation" in pertinent part as:

[A]ny accommodation, resort or amusement which is open to, accepts or solicits the patronage of the general public, including but not limited to ... public libraries, kindergartens, primary and secondary schools, high schools....

70. The District is a "person" as defined by the PHRA.

71. The District's schools, buildings, facilities, programs and services are "public accommodations" as defined by the PHRA.

72. As alleged herein, the District refused, withheld from, and denied E.S., because of ... his handicap or disability directly and/or indirectly, the accommodations, advantages, facilities and privileges of all District facilities and services.

73. As alleged herein, the District excluded or otherwise denied equal services, facilities, privileges, advantages, accommodations and/or other opportunities to T.S. and M.M. because of the handicap or disability of their son, E.S., an individual whom the District was known to have a relationship or association.

74. Parents filed an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") on March 21, 2017, alleging the aforementioned violations of the PHRA. PHRC Case No. 201604817

75. On March 22, 2017, PHRC Investigator Kimberly Kinsler emailed the parties that the Harrisburg, Pennsylvania office of the PHRC would issue a Right to Sue letter within 6 weeks of her email.

76. Parents have satisfied any state or federal administrative exhaustion requirements under the PHRA.

77. As a result of these PHRA violations, as set forth herein, Plaintiffs T.S., M.M. and E.S. suffered considerable financial and other injuries.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully demand that judgment be entered against Defendant, and respectfully request that the Court award monetary compensation for all damages resulting from Defendant's actions, attorneys' fees and costs, and any other relief this Court deems necessary and appropriate.

Date: May 23, 2018          Respectfully submitted,

*Benjamin J. Hinerfeld* (PA ID No. 78831)

**LAW OFFICE OF BENJAMIN J. HINERFELD**
Benjamin J. Hinerfeld, Esq.
    Ben@Hinerfeldlaw.com
Hallam R. Harper, Esq.
    Hallam@Hinerfeldlaw.com
1528 Walnut Street, Suite 1100
Philadelphia, PA 19102
T: (215) 575-0495
F: (215) 689-2423

*Counsel for Plaintiffs*